UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

TRISTAN L. KIRKPATRICK,
*also known as* TRISTIN L. ROAN,

    Plaintiff,

v.                                              No. 2:19-cv-01005-JCH-JFR

JAW YUE and SARAH YUE *individually*
*doing business as* PACIFIC RIM LLC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's First Motion to Amend/Correct Complaint (ECF No. 35) and Defendants' Motion for Summary Judgment on Claims Asserted Against Jaw Yue and Sarah Yue, Individually (ECF No. 38).

**I.    FACTUAL BACKGROUND[1]**

Defendants Jaw and Sarah Yue own and operate Pacific Rim, a bar and restaurant in Hobbs, New Mexico. Compl., ¶¶ 7-8, ECF No. 1. Plaintiff worked as a bartender there from November 2014 to February 2018. *Id*. ¶ 9. Mr. Yue was her immediate supervisor while Mike Dolorfino was her "other supervisor." *Id*. ¶ 10-11.

Plaintiff claims that Dolorfino created – and Defendants turned a blind eye to – a hostile work environment based on Plaintiff's sex and race. *Id*. ¶ 13-14. Dolorfino verbally bullied

---

[1] Although the record on a motion for summary judgment normally involves the identification of a factual controversy, here, Defendants' summary judgment motion is based on a purely legal issue. Plaintiff similarly identifies no factual dispute in her summary judgment opposition brief. She instead relies entirely on facts alleged in her complaint. Because the parties' summary-judgment pleadings frame the issue as a matter of law, the Court presents the facts as taken from Plaintiff's original complaint.

Plaintiff, telling her that she was too old to work as a bartender and calling her an "[expletive] idiot." *Id*. ¶ 14. Dolorfino would "scream[ ] in her face vulgarities" including about her race, age, and sex, and tried to get her fired by telling Defendants bad things about her. *Id*. ¶¶ 14, 16. Dolorfino told Plaintiff's daughter, who also worked at Pacific Rim, that she would never amount to "anything but a worthless [expletive]," and ordered her to clean the toilets. *Id*. ¶ 15. According to Plaintiff, "the harassment and hostile work environment became more and more constant" and would occur "almost constantly every day." *Id*. ¶ 16.

Plaintiff complained about Dolorfino to Defendants. *Id*. ¶ 18. Plaintiff met with Defendants, Dolorfino and Fred Baker, the general manager, to resolve the issues. *Id*. ¶ 20. Dolorfino admitted that he harassed Plaintiff about her age, weight, gender, and race, and admitted to sexually harassing Plaintiff's daughter-in-law,[2] saying it was a "cultural thing." *Id*. ¶¶ 21-22. (quotation mark omitted). Even though Defendants twice counseled Dolorfino about his behavior, they ultimately did nothing to stop him and Dolorfino's conduct continued. *Id*. ¶¶ 20, 23. Plaintiff also had meetings with Ms. Yue "about the hostile work environment and discrimination" and Ms. Yue would apologize for Dolorfino's behavior. *Id*. ¶ 19.

After Dolorfino falsely accused Plaintiff of drinking on the job, Plaintiff was removed as a bartender and replaced by a younger female. *Id*. ¶¶ 24-25. Plaintiff was "forcefully terminated" because she "could not take [Dolorfino's harassment and Defendants' connivance] anymore." *Id*. ¶ 26.

When Plaintiff was later offered a manager position at another bar, Dolorfino told the other bar's employees that hiring Plaintiff would be a mistake. *Id*. ¶¶ 27-28. Although Plaintiff accepted the position, she quit within three weeks because Dolorfino and his wife harassed

---

[2] Plaintiff refers to her "daughter" and "daughter-in-law," without noting any difference. Following Plaintiff's usage, the Court will do the same.

Plaintiff during her shift at her new job and told her they would never stop harassing her. *Id*. ¶¶ 29-30.

## II. PROCEDURAL BACKGROUND

On August 18, 2018, Plaintiff completed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Defs.' Ex. 1, ECF No. 36, 8 (EEOC Charge). She alleged discrimination based on race, sex and national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967. *Id*.

On April 18, 2019, Plaintiff's counsel requested a right-to-sue letter from the EEOC, which the agency issued on September 27, 2019. Defs.' Ex. 2, ECF No. 36, 12; Compl. ¶ 4. Plaintiff filed her federal complaint on October 28, 2019 asserting the following four claims for relief: discrimination in violation of 42 U.S.C. §§ 2000e-2, 2000e-3[3] (Count 1); a Title VII hostile work environment (Count 2); a claim for "disparate treatment race and sex discrimination," Compl. at 7, under Title VII (Count 3); and Title VII retaliation (Count 4).

In April 2020, the Court entered an initial scheduling order and Defendants answered the complaint. ECF Nos. 11, 12. The parties submitted a joint status report, which the Court adopted, giving Plaintiff until June 30, 2020, to amend her pleadings. ECF Nos. 19, 22. The Court set

---

[3] Although Count 1 of Plaintiff's complaint does not cite the specific subsection on which she relies, the Court notes that Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a). Title VII separately makes it "an unlawful employment practice for an employer to discriminate against any [employee] ... because he has opposed any practice made an unlawful employment practice ... or because he has made a charge" under the subchapter. 42 U.S.C. § 2000e–3(a).

3

expert disclosure deadlines for September and October 2020 and ordered discovery to end in December 2020 (the latter deadline was extended to March 2021). ECF Nos. 22, 26.

In anticipation of the November 2020 settlement conference (which ended up getting rescheduled to December), the parties exchanged position letters. Defendants emphasized in their letter "that Plaintiff's non-wage loss compensatory damages and punitive damages were capped at $50,000" under federal law based on the limited numbers of Defendants' employees. ECF No. 36, 3.

The December conference also was vacated, and, on January 5, 2021, Plaintiff moved to amend her complaint, asking for the Court's permission to add a state-law claim for relief for employment discrimination under the New Mexico Human Rights Act (NMHRA), N.M. Stat. Ann. § 28-1-7. According to Plaintiff, she "discovered that she was subject to a cap on her damages in the Federal Action where[as] she would not have been if she had … [brought] a state cause of action pursuant to [§ 28-1-7]." ECF No. 35 ¶ 17.[4]

Defendants oppose the motion to amend. They say that it is untimely and futile. Defendants also separately moved for summary judgment, arguing that Title VII forbids individual capacity claims against Sarah and Jaw Yue.

The Court addresses Plaintiff's motion to amend her complaint, first, and then Defendants' motion for summary judgment.

### III. DISCUSSION

#### A. Amending the Complaint Would Be Futile

---

[4] According to Plaintiff, "[t]here are different rules governing the measure of damages in a State Action as opposed to the Federal Action." ECF No. 35 ¶ 16 at 3. Plaintiff provides no legal citation to those rules, so the Court is unaware of them.

Plaintiff's motion to amend relies on subparts (a)(2) ("amendments before trial"), and (c)(1)(B), ("relation back of amendments") of Fed. R. Civ. P. 15. "Leave to amend under subsection (a) and relation back under subsection (c) [of Rule 15], while obviously related, are conceptually distinct." *Arthur v. Maersk Inc.*, 434 F.3d 196, 202-03 (3d Cir. 2006). "[E]ven if a proposed amended pleading satisfies Rule 15(c), leave to amend may be denied under Rule 15(a) if the Court determines that amendment would be 'unjust' and leave should not be granted." *Easley v. Tritt*, No. 1:17-CV-930, 2019 WL 4687139, at *2 (M.D. Pa. Sept. 26, 2019) (citation and quotation marks omitted). Because the Rule 15(a) analysis is dispositive against Plaintiff, the Court does not address Plaintiff's relation back argument.

Rule 15(a)(2) provides for liberal amendment of pleadings, instructing courts to "freely give leave" to amend "when justice so requires." "The grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Minter vs. Prime Equipment Co.*, 451 F.3d. 1196, 1204 (10th Cir. 2006). Subsection 15(a)(2) provides that after a party has amended a pleading once as a matter of course or the time for amendments of that type has expired, a party may amend only by obtaining leave of court or if the adverse party consents. Leave should be "freely give[n] … when justice so requires," but leave need not be granted on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, … or futility of amendment." *Duncan v. Manager, Dept. of Safety, City and Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

Defendants are correct that amendment would be futile because, absent an order of nondetermination from the New Mexico Human Rights Division, Plaintiff has failed to exhaust her administrative remedies. "To bring an NMHRA suit in district court, a plaintiff is required to exhaust the administrative grievance process with respect to all defendants named in the district-

court lawsuit." *Delopez v. Bernalillo Pub. Sch.*, No. CV 19-735 JCH-KK, 2021 WL 873354, at *7 (D.N.M. Mar. 9, 2021) (citing *Sonntag v. Shaw*, 2001-NMSC-015, ¶ 13, 130 N.M. 238, 243, 22 P.3d 1188, 1193)). "[F]ailure to exhaust administrative remedies deprives a district court of subject matter jurisdiction." *Rist v. Design Ctr. at Floor Concepts*, 2013-NMCA-109, ¶ 13, 314 P.3d 681, 686 (citing *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 20, 127 N.M. 282, 288, 980 P.2d 65, 71)). "EEOC right-to-sue letters cannot be treated as orders of nondetermination from the Division." *Id*. ¶ 10. The plaintiff has the burden of proving exhaustion of remedies under the NMHRA. *Id.* ¶ 11.

Plaintiff has not carried her burden to show exhaustion. Although Plaintiff alleged in her complaint that she received a right-to-sue letter from the EEOC, she did not allege that she received an order of nondetermination from the Division. Her complaint therefore does not establish exhaustion under the NMHRA. Nor does her motion to amend make any mention of a nondetermination order. Defendants highlighted the lack of a nondetermination order in their response brief, yet Plaintiff elected to file no reply brief explaining what steps she had taken, if any, in obtaining a nondetermination order. Thus, Plaintiff's pleadings, on their face, fail to establish exhaustion. Her motion to amend is therefore denied as futile.

### B. The Individual Capacity Claims Are Dismissed

Jaw and Sarah Yue move for summary judgment that Plaintiff's Title VII individual capacity claims against them are, as a matter of law, prohibited. Summary judgment motions can appropriately "rais[e] a question of law that the court must decide." *Wilson v. Union Pac. R. Co.*, 56 F.3d 1226, 1229 (10th Cir. 1995) (citation and quotation marks omitted). Both parties appear to agree that Defendants' motion raises a question of law for the Court to decide. *See Haynes v.*

*Williams*, 88 F.3d 898, 898–99 (10th Cir. 1996) (describing as a "purely legal question" whether an individual supervisor is personally liability under Title VII.)

Defendants are correct that "[u]nder long-standing circuit precedent, supervisors and other employees may not be held personally liable under Title VII." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1083 n.1 (10th Cir. 2007). "[S]upervisors may be named in their official capacity and/or as alter egos of the employer, but just as a means to sue the employer." *Lewis v. Four B Corp.*, 211 F. App'x 663, 665 n.2 (10th Cir. 2005). "[T]his procedural mechanism" may be "superfluous where … the employer is already subject to suit directly in its own name." *Id*. "[A]n individual qualifies as an 'employer' under Title VII [solely for purposes of imputing liability to the true employer] if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment. In such a situation, the individual operates as the alter ego of the employer, and the employer is liable for the unlawful employment practices of the individual without regard to whether the employer knew of the individual's conduct." *Haynes*, 88 F.3d at 899 (citation omitted).

Here, the complaint states that it is "brought against Pacific Rim … and Jaw Yue and Sarah Yue, individually as the sole members of Pacific Rim[.]" Compl. at 1 (capitalization omitted). The "general allegations" identify Pacific Rim as "[t]he Defendant," and the Yues as the "individual members owning" Pacific Rim. *Id*. ¶¶ 6, 7. Thus, Pacific Rim is subject to suit in its own name. To the extent that Plaintiff improperly sues Jaw and Sarah Yue in their individually capacities, those claims are dismissed with prejudice.

## V.  CONCLUSION

For the reasons stated herein, it is **ORDERED** that Plaintiff's First Motion to Amend/Correct Complaint **(ECF No. 35)** is **DENIED** and that Defendants' Motion for Summary

Judgment on Claims Asserted Against Jaw Yue and Sarah Yue, Individually **(ECF No. 38)** is **GRANTED**. Plaintiff's claims asserted against Defendants Jaw Yue and Sarah Yue in their individual capacities are **DISMISSED** with **prejudice**.

The Clerk of Court is directed to add Pacific Rim LLC to the case caption as the sole remaining Defendant. The docket should continue to reflect that Pacific Rim LLC is represented by the same defense counsels for Jaw and Sarah Yue (*i.e.* the law firm of Atwood, Malone, Turner & Sabin, P.A.).

**IT IS SO ORDERED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE